UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |
|---|---|
| In re:<br><br>JOYCE S. BIANCO<br><br>      Debtor | Chapter 7<br>Case No. 11-41733-MSH |

**MEMORANDUM OF DECISION ON UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE PURSUANT TO 11 U.S.C. § 707(b)(1) AND (b)(3)**

This matter is before me on the motion of the United States Trustee ("UST") to dismiss this case pursuant to Bankruptcy Code § 707(b)(1) and (b)(3) (11 U.S.C. § 101, *et seq.*). The debtor in this case, Joyce Bianco, filed her petition for relief under chapter 7 of the Bankruptcy Code on April 28, 2011. In seeking dismissal of the debtor's case pursuant to § 707(b)(1) and (b)(3), the UST's primary argument is that Ms. Bianco has sufficient income to repay a significant portion of her debt. Alternatively, the UST cites certain acts by Ms. Bianco which he alleges establish her bad faith in filing a chapter 7 petition.

In bringing this motion the UST relies on information obtained from informal discovery as well as from the debtor's petition and supporting schedules. According to schedule I accompanying her petition, Ms. Bianco receives $850 per month in unemployment compensation while her husband, Nicholas Bianco, who is not a debtor in a bankruptcy case, earns $8,649.33 per month in gross wages from his employment as a computer specialist. Schedule I reflects that after payroll deductions the combined average monthly income for the Biancos' household is $7,187.96.[1] According to schedule J accompanying her petition, Ms. Bianco and her husband

---

[1] The debtor listed $1,111.50 as her monthly income on Part II of the chapter 7 statement of

1

incur monthly expenses of $8,030. Included in the monthly expense amount is $3,580.85 for mortgage payments on two rental properties owned by Mr. Bianco in Everett and Somerville, Massachusetts.

While schedule J includes mortgage expenses associated with the rental properties, schedule I does not include income from those properties. The UST questions this anomaly. The UST notes that the Biancos' 2009 joint federal income tax return includes as income rents received in the amount of $49,350. The UST also points out, based on his review of bank statements supplied by the debtor, that on April 28, 2011, the date that Ms. Bianco filed her petition, Mr. Bianco owned a savings account with a balance of $16,396.99, which balance increased to $37,477.89 as of June 1, 2011. Finally, the UST advises that on September 6, 2011, while Ms. Bianco's chapter 7 case was pending, Mr. and Ms. Bianco granted a mortgage on their Tewksbury residence to Hanscom Federal Credit Union and received a home equity line of credit in the amount of $150,000.[2]

In response, Ms. Bianco, asserts that Mr. Bianco maintains a financial existence independent of hers and makes limited contributions to the household income. She submits that Mr. Bianco does not provide her with an allowance for personal expenses, except to buy groceries, and that she has never commingled her funds with Mr. Bianco's. She represents that Mr. Bianco

---

current monthly income and means-test calculation (Form B22A) filed in this case. The difference between the monthly income listed on the Form B22A (which reflects average income over the six months prior to the bankruptcy filing) and the monthly income provided on schedule I (which reflects income as of the petition date and as reasonably anticipated thereafter) can be explained by Ms. Bianco's representation in her affidavit in support of her objection to the trustee's motion to dismiss [doc. #19]: "In April, 2011 I lost my job at Perfecto's Café in Andover. Since then I have had no other income besides unemployment benefits with which to pay my bills."

[2] Although Ms. Bianco did not seek leave of court before mortgaging the Tewksbury property, the UST has not raised this fact in support of his § 707(b) motion.

purchased and owns individually three rental properties,[3] that she does not have a share in Mr. Bianco's real estate business and that she has no knowledge as to the running of that business. Ms. Bianco acknowledges that she signed the papers for an equity line on the couple's Tewksbury home, but she states in her affidavit in support of her opposition to the UST's motion to dismiss that she has "no further knowledge of that transaction, and it was not my idea." Finally, Ms. Bianco states that she sought bankruptcy relief because she lost her job and, having no income besides unemployment compensation, she could not afford to pay her bills.

To properly evaluate the parties' positions it is helpful to review the governing statute and the cases interpreting it. Bankruptcy Code § 707(b)(1) provides for dismissal of a case filed by an individual debtor whose debts are primarily consumer debts if "the granting of relief would be an abuse" of the provisions of chapter 7. Abuse may be established by application of a mathematical test set forth in in § 707(b)(2) or a subjective test under § 707(b)(3). The UST alleges abuse pursuant to § 707(b)(3), which provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph 2(A)(i) does not arise or is rebutted, the court shall consider—
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse [sic].

Prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), the court could "dismiss a case filed by an individual debtor . . . if it [found]

---

[3] Ms. Bianco's objection to the UST's motion to dismiss includes a recitation that Mr. Bianco owned three residential real estate properties as of the bankruptcy petition date, two in Everett and one in Somerville, Massachusetts. For reasons which are unclear but are not outcome determinative, the debtor's schedule J includes expenses only on two properties.

that the granting of relief would be a *substantial abuse* of the provisions of this chapter." 11 U.S.C. § 707(b) (effective June 19, 1998) (emphasis added). In the absence of a statutory definition for "substantial abuse," the Court of Appeals for the First Circuit in *In re Lamanna*, 153 F.3d 1 (1st Cir. 1998), adopted the "totality of the circumstances" test articulated by the Court of Appeals for the Sixth Circuit in *In re Krohn*, 886 F.2d 123, 126-27 (6th Cir. 1989). Applying this test meant inquiring into a "nonexclusive list of relevant considerations" including what is generally recognized as the primary, though not necessarily conclusive, factor, namely the debtor's "ability to repay his debts out of future earnings," as well as other factors such as whether the debtor exhibits lack of good faith, "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code," and whether he was forced into Chapter 7 by unforeseen or catastrophic events. *Lamanna,* 153 F.3d at 4; *In re Miller*, 335, 341 (Bankr. D. Pa. 2005) (recognizing that a "vast majority of both courts and commentators have opined that a debtor's ability to pay is the *sine qua non* of section 707(b)") (quoting *In re Attanasio*, 218 B.R. 180, 184 (Bankr. N.D. Ala. 1998*). In re Maiorino,* 435 B.R. 806, 809 (Bankr. D. Mass. 2010). The totality of the circumstances test as applied by courts prior to the passage of BAPCPA was codified in the new Act in § 707(b)(3)(B). Additionally, Congress identified bad faith as an independent basis for dismissal under § 707(b)(3)(A). *See In re Boule,* 415 B.R. 1, 2009 WL 722025 (Bankr. D. Mass. March 18, 2009).

When considering whether a debtor filed a bankruptcy petition in bad faith under §707(b)(3)(A), necessarily a case-specific inquiry, it is useful to keep in mind that "[t]he successful functioning of the bankruptcy act hinges both upon the bankrupt's veracity and his willingness to make a full disclosure. Neither the trustee nor the creditors should be required to

4

engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987) (quotations and citations omitted); *see also In re Marrama*, 430 F.3d 474, 482 (1st Cir. 2005) (discussing bad faith in the context of a conversion from chapter 7 to chapter 13). Candid and complete disclosure by the debtor is a central theme of the Bankruptcy Code and is thus an important factor to be considered when evaluating the debtor's bad faith. *See In re Hornung*, 425 B.R. 242, 249 (Bankr. M.D.N.C. 2010) (citing certain factors helpful for determining bad faith, such as "eve-of-bankruptcy purchases, filing incomplete or false schedules, or failure to cooperate with the bankruptcy trustee").

With respect to § 707(b)(3)(B), abuse under the totality of the circumstances standard, the first among equals of the *Krohn* factors adopted by the First Circuit is the debtor's ability to pay creditors. Courts have "generally concluded that a non-filing spouse's income is relevant to the determination of a debtor spouse's ability to pay." *In re Kulakowski*, 2011 WL 3878386, at *4 (Bankr. M.D. Fla. Sept. 2, 2011); *see also In re Adams*, 2007 WL 3091583, at *3 (Bankr. Md. Oct. 18, 2007); *In re Welch*, 347 B.R. 247, 252 (Bankr. W.D. Mich. 2006) (collecting cases); *In re Reeves*, 327 B.R. 436, 441 (Bankr. W.D. Mo. 2005) ("Inclusion of the income of the non-debtor spouse is considered necessary in order to derive an accurate picture of the debtor's disposable income for the reason that some portion of it is likely to be applied to household expenses, thereby affecting the share of the debtor's income required for support."); *In re Engskow*, 247 B.R. 314, 317 (Bankr. M.D. Fla. 2000) ("The family budget proposed by the debtor is extremely skewed and totally misleading without considering the wife's income. . . . The Debtor's true financial condition cannot be ascertained without an assessment of the spouse's income and her contribution to the various expenses.").

Courts are less unanimous, however, as to the extent to which the non-debtor spouse's income should be considered in making that determination. *In re Boatright*, 414 B.R. 526, 528 (Bankr. W.D. Mo. 2009). It is an open question "whether the debtor [sic] and non-debtor's income and expenses should simply be 'lumped,' or 'pooled,' together, or whether a court should look at the manner in which the debtor and non-debtor conduct their household finances and apportion their expenses accordingly" in evaluating the debtor's ability to repay creditors. *Id* at 531-32 (collecting cases).

Turning to the case at hand, I need not decide, at this stage, whether the Biancos' income must be pooled for purposes of determining whether Ms. Bianco has the ability to repay her creditors under the totality of the circumstances test of § 707(b)(3)(B) because the UST has satisfied his burden of showing bad faith under § 707(b)(3)(A).

Ms. Bianco failed to identify her husband's rental property income in schedule I, yet she deducted the rental property mortgage expenses for two of those properties in schedule J. At no point did Ms. Bianco seek to amend her schedules to augment the schedule I income despite having ample opportunity to do so. By including the rental property expenses but not the rental property income, Ms. Bianco has misrepresented her household's monthly income and has failed to provide candid and complete disclosures with respect to her bankruptcy petition. Neither the UST nor the Court should be required to play "tug-of-war" with Ms. Bianco to obtain information as basic as her household income.

Under these circumstances, I conclude that Ms. Bianco's petition was filed in bad faith and this constitutes an abuse of the provisions of chapter 7 of the Bankruptcy Code. As such, the UST's motion to dismiss under § 707(b)(3)(A) should be granted. The entry of an order of dismissal shall

be delayed for 14 days, however, to give Ms. Bianco time to consider whether she wishes to move to convert this case from chapter 7 to chapter 13.

At Worcester, Massachusetts this 29th day of August, 2012.

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:  Richard T. King
Assistant U.S. Trustee
For William K. Harrington, Acting United States Trustee
Worcester, MA

Douglas J. Beaton
For the debtor, Joyce S. Bianco
North Andover, MA